SWEENEY et al. v. BAY STATE OIL & GAS CO.

Nos. 30349, 30350. Jan. 26, 1943.

*133 P. 2d 538.*

Charles N. Haskell, of Muskogee, for plaintiffs in error.

Martin L. Frerichs, of Okemah, for defendant in error.

HURST, J. These are actions to partition two adjacent producing oil and gas leases. Bay State Oil & Gas Company, owner of an undivided one-half interest in each of the leases, was the plaintiff below in each cause. The defendants below are owners of the other undivided one-half interest in the leases. From a judgment decreeing the ownership and partition of the leases and directing their sale, six of the defendants, owning in all approximately a 1/20th interest in each lease, appeal. The owners of the remaining 9/20th interest in the leases do not appeal. The cases have been consolidated in this court for the purpose of briefing. The lease involved in cause No. 30349 is known as the Rogers lease, and the lease involved in cause No. 30350 is known as the Thomas lease.

On November 16, 1918, the Paden Oil Company was the owner of both leases, and on that day it entered into a written contract with W. G. Weimer in substance as follows:

That for and in consideration of an undivided one-half interest in both leases, Weimer agreed to clean out the producing well on the Rogers lease, assume payment for the rig being placed on the Thomas lease offsetting Rogers well No. 1, and within 60 days after completion of the Thomas well, if oil or gas is found in paying quantities therein, to start another well on the Thomas lease and to continue the development of both leases until they were thoroughly developed and equipped; that all expense of developing and operating the leases, other than the expense of cleaning out the Rogers well and drilling the first well on the Thomas lease, should be borne equally between the parties to the contract, the Paden Oil Company to pay its one-half of such expenses the first of each month; that Weimer was to have the management and operation of the leases and the sale of the production. The last paragraph of the contract then provides:

"It is Further Expressly Understood and Agreed that after the drilling of the first well on the above leases, in case the second party, (Weimer) his successors or assigns, desire to cease from drilling or developing of said premises that he may surrender his rights, privileges and interests in and to all said leased premises back to the said first party, (The Paden Oil Company) its

successors or assigns, terminating all his further obligations hereunder, having the privilege of removing his derricks, casing and other equipment paid for by him, or if the first party so elected, to be paid a fair value therefor, to be mutually agreed upon."

Bay State Oil & Gas Company succeeded to the rights of Weimer, and the defendants below succeeded to the rights of Paden Oil & Gas Company, in said leases and contract.

The petitions in the two cases are substantially the same. In each petition, Bay State Oil & Gas Company alleged the ownership of the leases; that it owns a half interest in each lease by assignment from Paden Oil Company; that each lease is producing about 18 barrels of oil per day; that by reason of the multiplicity of cotenants in said leases, the titles are clouded and the marketability of the oil and gas is impaired; that it is necessary to expend large sums of money on the leases, and that by reason of the condition of the title plaintiff cannot safely and profitably develop, manage, and operate the leases; that an intolerable condition has arisen, and it would be to the best interest of all parties for the leases to be partitioned.

For answer the appealing defendants set out the said contract and alleged that plaintiff has no such ownership as will enable it to sue for partition, that a partition would defeat the purpose for which the property was acquired and is being held, and that there is an agreement implied in said contract that the property will not be partitioned.

For its reply the plaintiff alleged that it had complied with all the terms of said written contract, including the drilling of an additional well on the Thomas lease, that it had to sue the Paden Oil Company to recover its share of the expense thereof, and that none of the defendants have ever been ready and willing to further develop the property.

The defendants filed a motion for judgment on the pleadings, which was overruled. This raised the sufficiency of the pleadings to support the judgment. Walker v. Mills, 182 Okla. 480, 78 P. 2d 697. Evidence was heard but none of the evidence was brought up, the appeals being by transcript.

Appellants make three contentions: (1) That the plaintiff has no such title as gives it the right to partition; (2) that the purpose for which the property was acquired would be defeated by partition; and (3) that the effect of the partition decree is to abrogate the contract and substitute for it a different contract made by the court.

The appellants do not contend that a producing oil and gas lease may never be partitioned either in kind or by sale. Their contention is that under the particular contract here involved the plaintiff is not entitled to force the partition of the leases. They do not refer to Wolfe v. Stanford, 179 Okla. 27, 64 P. 2d 335, where this court reviewed at length the authorities dealing with partition of mineral rights, criticized and overruled in part some of our prior decisions, and laid down the rule that partition of property including mineral rights is looked upon with favor, and that the burden rests upon the one seeking to prevent partition to plead and prove facts showing it would be inequitable to enforce the right. That case was cited with approval in Collier v. Collier, 184 Okla. 38, 84 P. 2d 603, and in Erwin v. Hines, 190 Okla. 99, 121 P. 2d 612. On the general subject of partition of oil and gas rights, see, also, 47 C. J. 291, 298, 447; 24 Am. Jur. 526; 36 Am. Jur. 420; L. R. A. 1916D, 1154; 3 Summers Oil & Gas (Perm. Ed.) §§ 535-537.

1. Under their first proposition defendants contend that the estate in the leases acquired by the plaintiff is a limited one, and that the continued performance of the obligations imposed upon it by the contract is a prerequisite to the continuance of its rights. They rely upon Patsy Oil & Gas Company v. Baker, 127 Okla. 76, 259 P. 864; Benavides et al. v. Hunt et al., 79 Tex. 383, 15 S. W. 396; Gypsy Oil Co. v. Cover et al., 78 Okla. 158, 189 P. 540; Hitt v.

Henderson, 112 Okla. 194, 240 P. 745; Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 P. 33, and other similar authorities. The authorities cited do not support the contention. In the Patsy Oil & Gas Company Case the assignee failed to drill a well as agreed. It would be in point if Weimer or the plaintiff had failed to clean out the Rogers well or drill the Thomas well, and the defendants were suing to cancel the assignment of the lease for such failure. The other cases have to do with express or implied covenants in oil and gas leases and the duty which the lessee owes to the lessor thereunder. We are dealing here with the duty which one lessee owes to his colessee under the terms of a written contract. The rights of the lessors are not involved in these cases. Under the written contract the title of the plaintiff as successor to the interest of Weimer to an undivided one-half interest in the two leases became vested when it complied with the specific agreement to clean out the Rogers well and to drill the well on the Thomas land, and when the option to surrender the lease, contained in the last clause of the contract, was not exercised by it, and when it received the assignment. The allegations of the petition that the half interests were duly assigned to plaintiff must be taken as true.

2. Under the second proposition the defendants contend that an agreement should be implied in said contract that the leases are not to be partitioned and that the purposes of the contract can only be carried out by the development and operation of both leases to the mutual advantage of the owners. The defendants rely upon Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 P. 33; Cotner v. Mundy, 92 Okla. 268, 219 P. 321; McInteer v. Gillespie, 31 Okla. 644, 122 P. 184. We do not find these cases helpful. In the McInteer Case the written contract specified that the property was jointly acquired for the purpose of sale in a certain manner, and it was held that the contract impliedly excluded a sale or disposition of the property in any other manner. The other cases involve the duties the lessee owes

to the lessor, which are implied in the lease contract. There is no express language in the contract which precludes either party from securing a partition of the leases, and we do not believe such an agreement can be implied from the nature of the contract and the property involved. The fact that the parties to the contract may not, at the time of entering into it, have contemplated partition of the leases, is not a sufficient reason for implying an agreement that there should be no partition in the future. Delta Drilling Co. v. Oil Finance Corporation, 195 La. 407, 196 So. 914; 47 C. J. 323, note 64. It would be rare indeed if parties should have such thought in mind at the time of entering into the relationship. The fact that plaintiff had the exclusive right to manage the property does not imply an agreement that either party shall not have the right to force partition. Delta Drilling Co. v. Oil Finance Corporation, above; Deeb v. Goryeb, 15 N. Y. S. 2d 617. Nor does the fact that the plaintiff was under a duty to operate and further develop the property imply such an agreement, since this duty was qualified by the fact that the cost of operation and further development was to be borne equally by the plaintiff and the defendants. Under these circumstances any further development depended upon the co-operation of the parties.

3. Under the third proposition, which is closely related to the second, the defendants contend that the effect of the sale of the property under the partition decree will be to terminate the contractual rights and obligations of the parties contrary to the terms of the contract. They say that there are only two ways for the plaintiff to terminate the contract, (1) by developing and operating the leases until the minerals are all removed, and (2) by surrender of the leases as provided in the last paragraph of the contract. The defendants rely upon Elrod v. Foster (Tex. Civ. App.) 37 S. W. 2d 339; Cole Petroleum Company v. United States Gas & Oil Co., 121 Tex. 59, 41 S. W. 2d 414; Jackson v. Twin State Oil Co., 95 Okla. 96, 218 P. 324, and Black on Rescission and

Cancellation, § 515. We do not find these authorities in point. The Elrod Case deals with the right of the part owner of an oil and gas lease to avoid, by partition proceedings, an express contractual liability for his expense in drilling the well. The Cole Petroleum Company Case has to do with cancellation of an assignment for failure to market the gas. The Jackson Case has to do with an express agreement for termination. Black has to do with the right to rescind contrary to the express language of the contract.

Of course, the purpose and effect of a partition proceeding is to terminate the joint ownership of the property and the relation of the parties with reference thereto. 40 Am. Jur. 5, § 4; 47 C. J. 287, § 47. It is said that the courts look with favor upon proceedings to partition property (Wolf v. Stanford, above; 40 Am. Jur. 5, § 4), that the right to partition property does not grow out of contract (40 Am. Jur. 4, § 2) and the right exists where a case is fairly brought within the law authorizing it, regardless of whether it is a proceeding under the statutes or in equity. 47 C. J. 288; 40 Am. Jur. 22, § 27.

In the present case it appears that the court, without first appointing commissioners to partition the property, decreed that partition in kind could not be made without manifest injury to the parties and ordered the sale of the leases. In Collier v. Collier, above, which involved the statutory partition of the surface and mineral rights, it was held that only commissioners appointed in such a proceeding could make such a finding in the first instance. The pleadings here are sufficient to justify a decree of partition in equity, under the rule stated in Clark v. Mercer Oil Co., 139 Okla. 48, 281 P. 283. It is not here contended that it was necessary to appoint commissioners, or that partition in kind could be fairly made, and we assume both parties in the lower court (the evidence not being before us) treated this as a partition in equity rather than under the statutes.

Affirmed.

CORN, C. J., and BAYLESS, WELCH, and DAVISON, JJ., concur. GIBSON, V. C. J., and OSBORN and ARNOLD, JJ., dissent. RILEY, J., absent.