No. 14,175.

SUCCESSION OF OWEN GLANCEY.

SYLLABUS.

By Article 1289 of the Civil Code the general rule is announced that no one can
be compelled to hold property with another unless the contrary has been
agreed upon, that any one has the right to demand the division of a thing
held in common. This being the case it behooves any one against whom an
action of partition is directed by joint owners, to set up objections thereto,
either by answer, or by some exception other than an exception of no cause
of action.

APPEAL from the Civil District Court, Parish of Orleans—
Sommerville, J.

The opinion of the court was delivered by NICHOLLS, C. J.

On the application for rehearing by NICHOLLS, C. J.

Thomas E. Glancy and Owen Glancy, Jr., have appealed from a
judgment sustaining an exception of no cause of action taken by Mrs.
Margaret Higgins, widow of Owen Glancy, Sr., individually and as
dative tutrix of the minor Viola Glancy, and Margaret Murray, wife of
Martin Murray, to the petition filed by them in the District Court. In
this petition they averred that they were the owners in common with
Mrs. Margaret Higgins, widow of Owen Glancy, Michael Glancy,
Elizabeth Glancy, widow of Charles J. Canus by first marriage, and
now the wife of Thomas Huff, Margaret Glancy, wife of Martin
Murray, Viola Glancy, a minor, and May Ellen Redmond, wife of
August Caspar, all of this city, of certain real estate which they
described, among which were two properties described as lots Nos. 21
and 22 of Square 5, in the Fifth District of the City of New Orleans.
That though said lots Nos. 21 and 22 were acquired in the name of
Mrs. Margaret Higgins, wife of Owen Glancy, Sr., and though it was
stated (in the act by which they were acquired) that the same were

acquired with the separate and paraphernal funds of the said Mrs. Margaret Higgins), petitioners averred that it was not true that same was acquired with the separate and paraphernal funds of Mrs. Margaret Glancy; the fact was that said lots 21 and 22 were acquired with funds and monies belonging to the community of acquets and gains, which then existed between the said Mrs. Margaret Higgins and the said late Owen Glancy. That Mrs. Margaret Higgins never had any separate and paraphernal funds. That said Owen Glancy died testate as appeared by his last will and testament which had been probated in the Civil District Court. That the bequests made in the will had all been duly discharged, or paid, and there were no debts due by the estate and petitioners were unwilling to hold the property of said estate in indivision, and desired that same be partitioned. That said Mrs. Margaret Higgins, widow of said late Owen Glancy, had, ever since his death, collected rents and revenues of the properties belonging to said estate for which she is liable to all parties in interest therein; that said fruits and revenues were as follows: For the improvements on lot No. 8 in square No. 4, and lots Nos. 3 and 4 of square No. 5, at the rate of $40 per month. That in the rear of said lots Nos. 3 and 4 there was a stable which was burned and destroyed by fire on the 21st day of January, 1900; that the rental of same is fully worth ten ($10) dollars per month, which is due by said Mrs. Margaret Higgins, beginning April 9th, 1894, up to January 21st, 1900. That said Mrs. Margaret Higgins, widow of Owen Glancy, disposed of a cart belonging to the estate on a date unknown to petitioners, and petitioners are informed for the sum of twenty ($20) dollars; that there is also to be partitioned the sum of three hundred and ten ($310) dollars, being the loss by fire of the properties of said estate, which occurred on said 21st day of January, consisting of a stable and other improvements in the rear of the premises known as No. 310 Webster avenue, and which amount of three hundred and ten ($310) dollars is due by the National Fire Insurance Company of Hartford, Conn., was adjusted by said company at the aforesaid sum. That the estate was also possessed of live stock consisting of cows and a horse and also a wagon, which were lost at the time of said fire, all of which cows, horse and wagon, were fully worth the sum of five hundred ($500) dollars. And petitioners averred that they were kept in ignorance of the will made by said late Owen Glancy, and that the discovery of said will was accidental, they

having been at all times under the impression that the said late Owen Glancy had made no will and that Mrs. Margaret Higgins, widow of Owen Glancy, was entitled, as surviving spouse in community, to the usufruct of the estate left by said late Owen Glancy, and because of the wilful concealment by the said Mrs. Margaret Higgins, widow of said Owen Glancy, petitioners allowed her to retain possession of said live stock, which they would not have done had they been informed of the existence of said will and because of said concealment and further because of the negligence and proper want of care on the part of said Mrs. Margaret Higgins, widow of Owen Glancy, petitioners have been damaged in the loss of said live stock and wagon.

Petitioners also averred that ever since the death of said late Owen Glancy, the said Mrs. Margaret Higgins, his said widow, has had the use and derived an income from the said live stock, horse and wagon, of about fifty ($50) dollars per month.

Petitioners averred that the said Mrs. Margaret Higgins, widow of Owen Glancy, is dative tutrix of the minor, Viola Glancy, but by reason of conflicting interest herein a special tutor *ad hoc* should be appointed to represent the said minor Viola Glancy.

In view of the premises, they prayed that a tutor *ad hoc* be appointed to the minor Viola Glancy; that the different parties named as being owners in common, and their husbands, be cited; that after due proceedings there be judgment ordering the real estate described to be sold in order to effect a partition; that there be judgment against Mrs. Margaret Higgins, widow of the late Owen Glancy, decreeing that she is indebted unto the mass for all the rents and revenues collected from said properties at the rate of forty ($40) dollars per month from April 9th, 1894, up to the day that the same shall be sold. That it be further decreed that she is further indebted unto the mass for the rents and revenues of the stable or dairy in the rear of the premises No. 310 Webster avenue at the rate of ten ($10) dollars per month from April 9th, 1894, to January 21st, 1900, six years, nine months and twelve days, say the sum of eight hundred and fifteen ($815) dollars for rental of the stable or dairy; that it be also decreed that said Mrs. Margaret Higgins, widow of Owen Glancy, is further indebted unto the mass in the sum of twenty ($20) dollars, value of the cart sold by her, and further indebted unto the mass in the sum of five hundred ($500) dollars for the value of the live stock and wagon belonging to the

estate, and further indebted unto the mass in the sum of four thousand
and seventy-five ($4,075) dollars, being the profits realized by her from
the use and enjoyment of said live stock, and that the amount of three
hundred an ten ($310) dollars, due by the National Fire Insurance
Company, be also included as forming the mass when collected from
said National Fire Insurance Company, and that all the parties ʼı
interest be referred to Robert J. Maloney, notary public, to effect and
complete said partition, and that all the costs of these proceedings and
all other necessary charges and expenses of these proceedings be borne
by the mass.

And for general relief.

Before filing their exception of no cause of action, the parties ex-
cepting had filed an exception that the suit could not be proceeded wtih
because the petition was vague, general and indefinite; that no where
did the acquisition of the properties by any of the respective parties
appear; no allegations were made as to whether or not there existed a
family relationship or otherwise between the parties, or in what pro-
portions, if any, the respective parties might be entitled to the prop-
erties, and that otherwise said petition was so verbose, involved and
ambiguous that exceptors could not safely answer thereto.

2nd. That insisting upon the above exception, and in event only that
it could be overruled, exceptors said that the estate of Owen Glancy
was under administration of the Honorable Court; that a contest over
the appointment of an administrator had arisen and was still pending
undetermined; that the rights of the minor, Viola Glancy, were in-
volved and were not ascertainable until the estate was administered,
and it should appear affirmatively of record that said estate owed no
debts; that the law accepted the succession for the minor under benefit
of inventory, until her rights be ascertained as aforesaid; this action
was premature.

In view of the premises, exceptors prayed these exceptions be main-
tained and plaintiffs' action be dismissed at their costs.

This exception had been overruled.

Appellants moved for a new trial on the following grounds:

1st. That the judgment maintaining the exception of no cause of
action was contrary to law.

2nd. That if the exception of no cause of action was well founded,
which was, however, denied, the petition for a partition should only be

dismissed as against such defendants as have been filed and had the right to urge the exception, leaving the petition undisturbed as against such defendants who had not urged the exception, but had joined issue.

3rd. That where there are several defendants, all sued upon the same grounds of action, and the object of the suit was to effect a partition of property held in common, and involving an accounting and settlement of their respective interests of all parties, and some of the defendants had joined issue, and one or two others had urged the exception of no cause of action, the best practice would be to refer the exception to the merits and not try the case piecemeal.

4th. Was the exception filed, in the light of the argument and reason urged in support thereof, really an exception of no cause of action, and should not the exception of prematurity have been filed in limine?

5th. If the judgment of the court be allowed to stand, then the rights of the petitioners in the partition proceedings had been adjudged and passed upon, and they were forever barred from renewing their application.

6th. Had Thomas Glancy and Owen Glancy any rights whatever in the estate of their father, and, if so, what were these rights and to what extent?

7th. The usufruct was destroyed if the bequests and the usufruct could not co-exist; and in the instant case, how could it be said that the dispositions contained in the will of the late Owen Glancy were not adverse to the usufruct, when one hundred and fifty dollars were bequeathed to Margaret Murray out of the real estate, which clearly showed that it was the intention of the testator that the real estate should be sold and one hundred and fifty dollars paid to the legatee.

8th. Petitioners prayed, in their petition, that two lots of ground, then standing in the name of the widow, be declared community property. Why we ask, was there no cause of action disclosed as to that part of the petition? the court took no notice of that branch of the case.

9th. The court took no notice of the additional statement in the petition which referred to money in the hands of the Insurance Company and which the Insurance Company refused to pay unless all parties joined in receipting for and releasing the company from further liability under its policy of insurance.

10th. Even if the court were correct as to the question of the usufruct, which we denied, that nevertheless any one of the parties having an interest in the property might require a partition of a thing held in common, subject to the right of the usufructuary, whatever they might be.

11th. If the request made by the late Owen Glancy exceeded the disposable portion, same could only be ascertained after a sale of that property and payment of all just charges against it.

The new trial was refused and the plaintiff appealed.

*Theodore Cotonio,* for Plaintiffs, Appellants.

*McCloskey & Benedict,* and *Walter L. Gleason,* for Defendants, Appellees.

The opinion of the court was delivered by

NICHOLLS, C. J. We find copied in the transcript, filed in this case, all of the proceedings had in the Succession of Owen Glancy, although the only issue before us is as to the correctness of the ruling of the district judge sustaining an exception of no cause of action filed by Mrs. Margaret Higgins, the widow in community of Owen Glancy, Sr.

We, of course, have come to a knowledge of these proceedings through that fact, but we do not feel justified by reason of that fact into going into an examination of and discussion of the whole situation of the succession upon this appeal. We think we should confine ourselves to the pleadings of the appellant in his petition. We do not think plaintiffs' demand should have been dismissed upon an exception of no cause of action. The exception was levelled at the whole demand and we have held that an exception so made was correctly overruled if any part of the demand could stand against the exception. Peoples State Bank vs. St. Landry State Bank, 50 Ann.; City of New Orleans vs. Collins, 52 Ann. 973.

At least a part of plaintiff's demand should be tried upon the merits.

The plaintiffs allege that they are owners in common with the defendant of certain described property; that they are unwilling to remain any longer in indivision; they ask that a partition of the property be made and that to that end a sale of the same be made. That

certain properties described stands in the name of their mother, Mrs.
Margaret Higgins, widow of Owen Glancy, as having been purchased
by her with her paraphernal funds, but that she had no paraphernal
funds to purchase the property with and the property really belonged
to the community which existed between her and her husband. That
Owen Glancy had died testate; that the bequests made by the will had
all been duly discharged and there were no debts due by the estate.
That the widow of Owen Glancy had taken possession of all the prop-
erty and drawn all the fruits and revenues therefrom and used the
same since the death of her husband. That she had been permitted to
do this by plaintiffs, in ignorance of the fact that Owen Glancy had
left a will. That she should be held to account for the same and for
certain monies which she had received from an Insurance Company for
the loss of a certain building. There is no declaration made by the
plaintiffs that they are the sons of Owen Glancy, nor that their rights
as forced heirs have been in any manner trenched upon by the will of
the deceased. What dispositions the will contained are not set out,
inferentially they are such as induce the plaintiffs to believe that Mrs.
Owen Glancy has, by reason of its terms, no usufruct under the Act of
1844. We presume from the whole tenor of the petition that plaintiffs'
joint ownership of the property is based upon being heirs of their father
and that the property is sought to be partitioned as community prop-
erty.

While the issue between the parties is one raised on the face of
plaintiffs' petition, yet the briefs and arguments before us are directed
entirely to a discussion of the legal question as to whether, or not,
under the terms of Owen Glancy's will the widow was deprived of the
benefit of the usufruct granted to a surviving widow under the Act of
1844. The district judge had all papers of the succession before him
and may have felt himself justified through his judicial knowledge of
their contents in using them in connection even with an exception of
no cause of action, but they were not introduced in evidence on the
trial of such an exception.

Plaintiffs insist that the widow has no usufruct and that their right
to a partition is absolute. The widow set up no objection or exception
to this claim other than the exception of no cause of action. If plain-
tiffs be joint owners of the property with Mrs. Owen Glancy, the law
gives them the right to a partition. Article 1289 of the Code declares

that "no one can be compelled to hold property with another unless the contrary has been agreed upon. Any one has a right to demand the division of a thing held in common by the action of partition."

This being the case, it behooves any one against whom an action of partition is directed by their joint owners to set up their objections by way of special exception or defense and not meet the demand by an out and out denial of a right of action. Appellees should have set up exceptions other than this particular exception or gone to trial on a denial of the right of partition in an answer. Defendant urges it would seem that if she is, in point of fact, entitled to a right of usufruct as surviving widow in community, the co-owners with her are as a resulting fact cut off from a right of partition.

If by this she means that since the Act of 1844 the children of the marriage cannot sue and actually recover from the mother and take out of her possession, freed from her usufructuary rights, their father's interest in the community property, she is supported in her contention by the decision of this court in Day vs. Collins, 5 Ann. 588. The court held, however, in that case, that notwithstanding the existence of usufruct, the affairs of the community could be ascertained and liquidated by action. (See Ogden vs. University, 49 Ann. 195; Succession of Moore, 42 Ann. 336.)

We are not aware that this court had ever held that the fact of the existence of the usufruct, in the surviving partner in community, would cut off an action of partition by the heirs of the other spouse, if the result of the partition would not be to extinguish the usufructuary's right. The expressions used in Dickson vs. Dickson, 33 Ann. 1372, 1377, 1380, do not go that far. We are not disposed to pass upon that question on an exception of no cause of action.

Article 605 of the Civil Code declares that the owner may mortgage, sell or alienate the thing subject to the usufruct without the consent of the usufructuary, but he is prohibited from doing it in such circumstances and under such conditions as may be injurious to the enjoyment of the usufructuary. This Article deals with the conventional usufruct. We have several instances in the Code where the property affected by a usufruct is none the less authorized to be sold, if sold, subject to the usufruct. (C. C. 584, 585, 587.)

We think that question should be left to be determined after evidence adduced on the facts of each particular case.

We would regret that a succession as small as this succession is should be exhausted by costs, and we feel warranted in view of the discussion of the subject before us in making some remarks which may have the effect of putting an end to future litigation. The usufruct granted to the surviving partner in community under the act of 1844 (Section 629, Revised Statutes) is one conferred upon him or her by the law itself. It exists subject to the right of the deceased spouse to control and regulate it either in part or entirely by his last will and testament. If he makes no last will, the law declares the surviving partner shall hold in usufruct so much of the share of the deceased in said community as may be inherited by his issue. In that case, the whole of his share.

If, by his will, he has disposed of certain specific property and no more, in full ownership, that particular property would pass out of the succession to the legatee free from the usufruct, but the usufruct would attach to the balance; that being "so much of this share in the community property as would be inherited by his issue," under the circumstances. The cutting off of the usufruct would be measured exactly by what had been disposed of by the deceased spouse to the prejudice of the usufruct and inconsistent with it. If the deceased left the survivor the full ownership of certain property, he or she would take that, holding the balance of his share in usufruct. If he left a legacy to a third person payable out of the revenues of either the whole of his share in the community property, or of a particular or specific part of it, the survivor would take the usufruct, but with the charge upon it of making payments of the legacy out of the revenues to the extent. The legatee having the right to make his legacy available by and through the usual legal remedies.

For the reasons assigned herein, it is ordered, adjudged and decreed that the judgment herein appealed from be, and the same is hereby, annulled, avoided and reversed and the exception of no cause of action is set aside and this cause is hereby remanded to the District Court with orders to reinstate the same for further proceedings according to law. Costs of appeal to be paid by appellee; those of the lower court to await the final decisin of the case.

### ON APPLICATION FOR REHEARING.

NICHOLLS, C. J. Among other grounds assigned by appellee for a rehearing it is urged that she had filed a motion to dismiss the appeal

for want of jurisdiction *ratione materiae,* as the amount in dispute was below the limit of our appellate jurisdiction. The motion did not escape our attention—it was considered by the court, though no mention was made of the fact in our judgment. Appellee must bear in mind that the appeal in this case was taken from a judgment of the District Court sustaining an exception of no cause of action. For the purposes of the trial of that exception the allegations of plaintiff's petition were taken for true, and they must also be taken for true for the purposes of the appeal taken from the judgment sustaining the exception. Matters, therefore, are not in a condition such as would justify the court in declaring that the claims and amounts for which plaintiff alleges appellee to be responsible are fictitious claims, or for fictitious or inflated amounts. Testing our jurisdiction from the standpoint of appellant, allegations that the appellee is chargeable with the amounts declared on by the plaintiff in partition there is no ground for dismissing the appeal. The motion to dismiss for want of jurisdiction was not well grounded. The rehearing is refused.